UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**KINGSLEY ASUKWO,**

    **Plaintiff,**

    v.                                                                             Case No. 24-CV-1358-SCD

**JOSEPH NANTOMAH,**
**INVESTORS CAPITAL LLC,** and
**HIGH INCOME PERFORMANCE PARTNERS LLC,**

    **Defendants.**

---

### DECISION AND ORDER
### ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

    Kingsley Asukwo lost substantial sums of money investing in what turned out to be a Ponzi scheme orchestrated by Joseph Nantomah and his investment companies, Investors Capital LLC and High Income Performance Partners LLC. After Nantomah failed to pay back Asukwo's investment or his promised return, Asukwo sued Nantomah and his LLCs in federal court, asserting claims for breach of contract, civil theft, deceptive trade practices, and violations of state and federal securities laws. Asukwo has moved for summary judgment on all but one of his claims. The defendants' lack of response to Asukwo's motion—and general non-involvement in this and other, similar actions—appears to be a tacit admission of deceit. Likewise, the undisputed facts in this case demonstrate that Asukwo is entitled to summary judgment on most of his claims.

### BACKGROUND

    In accordance with local rules, *see* E.D. Wis. Civ. L. R. 56(b)(1)(C), Asukwo filed a statement of proposed facts along with his summary judgment motion, *see* Pl.'s Statement

Proposed Facts, ECF No. 16. The defendants have not responded to Asukwo's motion or proposed facts, and the time to do so has passed. *See* E.D. Wis. Civ. L. R. 56(b)(2). Thus, I will deem Asukwo's uncontroverted facts admitted for the purpose of deciding summary judgment. *See* E.D. Wis. Civ. L. R. 56(b)(4).

Joseph Nantomah presented himself as a successful entrepreneur and a knowledgeable real estate investor. On social media, he regularly posted videos and images of luxury cars, large homes, and lavish vacations and suggested he could help others get rich quick, too, if only they invested in his highly successful real estate business. Nantomah claimed that he had successfully "flipped" hundreds of properties, that he had made millions of dollars in profit, and that his investment companies were well-established and highly profitable, making and handling millions of dollars in real estate investment deals. He invited others to join in on the wealth and promised quick returns with "zero risk." *See* Pl.'s Facts ¶¶ 7–14; *see also* Goodhart Decl. Ex. F, ECF No. 18-6; Goodhart Decl. Ex. G, ECF No. 18-7; Goodhart Decl. Ex. H, ECF No. 18-8.

After seeing Nantomah boast on social media, Kingsley Asukwo decided to get in on the action. *See* Pl.'s Facts ¶¶ 7, 15. In December 2022, he entered into an investment agreement with one of Nantomah's investment companies, Investors Capital LLC, which guaranteed a 25% return within eight months. *Id.* ¶¶ 15–17; *see also* Asukwo Aff. Ex. A, ECF No. 17-1. The agreement indicated that Asukwo's investment would be used solely for rehabbing and flipping a property located on the South Side of Chicago. Asukwo invested $60,000. According to the agreement, Asukwo was due $75,000 (his investment plus the guaranteed 25% return) by August 6, 2023. *Id.* ¶ 24.

Asukwo alleges that Nantomah offered him additional investment opportunities during the summer of 2023. In July, Nantomah promised a guaranteed 50% return within three months. *See* Pl.'s Facts ¶¶ 18–20. Asukwo invested another $10,000, this time with Nantomah's other investment company, High Income Performance Partners LLC. According to the second investment agreement, Asukwo was due $15,000 (his investment plus the guaranteed 50% return) by October 12, 2023. *Id.* ¶ 26. In August, Nantomah presented an even better investment opportunity—a guaranteed 50% return within just two months. *See id.* ¶¶ 21–23. Asukwo invested another $3,000, again with High Income Performance Partners. According to the third investment agreement, Asukwo was due $4,500 (his investment plus the guaranteed 50% return) by October 12, 2023. *Id.* ¶ 28.

Nantomah's promises proved too good to be true. He didn't make any payments by the agreed-upon deadlines. *See* Pl.'s Facts ¶¶ 23–29. He eventually paid Asukwo $10,000 due under the second investment agreement, and that was it. When Asukwo demanded that he pay up, Nantomah simply made excuses, claiming that he was working with his bank to process payments, he had unexpected delays but would pay soon, and he was in the process of closing a big deal. *Id.* ¶¶ 30–31. Asukwo, however, still hasn't received any of the $84,500 allegedly owed. *Id.* ¶ 32.

In October 2024, Asukwo sued Nantomah, Investors Capital LLC, and High Income Performance Partners LLC in federal court, asserting claims for breach of contract, civil theft, deceptive trade practices, the sale of an unregistered security under Wisconsin law, a misstatement or omission in the sale of a security, the sale of unregistered securities under federal law, and federal securities fraud. *See* Compl., ECF No. 1. The matter was randomly assigned to this court, and all parties consented to the jurisdiction of a magistrate judge under

3

28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3 & 7. The defendants responded to the complaint, *see* Answer, ECF No. 6, and in February 2025, the parties submitted a discovery plan, *see* Joint Rule 26(f) Report & Disc. Plan, ECF No. 10. The court hasn't heard from any of the defendants since then. On October 22, 2025, Asukwo moved for summary judgment on most of his claims. *See* Pl.'s Mot. Summ. J., ECF No. 14; Pl.'s Br. Supp., ECF No. 15. The defendants have not responded to his motion.

## SUMMARY JUDGMENT STANDARD

Asukwo moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)).

## DISCUSSION

Asukwo moves for summary judgment on six of the seven claims asserted in the complaint: (I) breach of contract under common law; (II) civil theft under section 895.446 of the Wisconsin statutes; (III) deceptive trade practices under section 100.18 of the Wisconsin statutes; (IV) the sale of an unregistered security under section 551.301 of the Wisconsin statutes; (V) a misstatement or omission in the sale of a security under section 551.501 of the

Wisconsin statutes; and (VI) the sale of an unregistered security under section 12(a)(1) of the Securities Act of 1933.

## I. Asukwo Is Entitled to Partial Summary Judgment on His Breach of Contract Claim

Wisconsin substantive law applies to this diversity action.[1] *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019) (citing *Med. Protective Co. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018)). To prevail on a breach of contract claim under Wisconsin law, Asukwo must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018) (citing *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008)). "Under Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration." *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (citing *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 20, 862 N.W.2d 879, 885).

Asukwo is entitled to summary judgment on his claim that Investors Capital LLC breached the December 2022 investment agreement.[2] First, the undisputed facts establish the existence of a contract. Although no one signed the agreement on behalf of Investors Capital, *see* Asukwo Aff. Ex. A, at 6, the defendants admitted in their answer that the company (through its member, Nantomah) entered into an investment agreement with Asukwo on December 6, 2022, whereby the LLC promised a 25% return on Asukwo's $60,000 investment

---

[1] It is undisputed that Asukwo is a citizen of Texas, that the defendants are citizens of Wisconsin, and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* Answer ¶¶ 1–5. Thus, subject matter jurisdiction is secure. *See* 28 U.S.C. § 1332.

[2] Although Nantomah is a member of Investors Capital LLC, *see* Answer ¶ 3, he is not a named party to the investment agreement, *see* Asukwo Aff. Ex. A, at 1. Accordingly, I will deny Asukwo's motion to the extent he seeks to hold Nantomah personally liable for breach of contract.

within eight months, and that Asukwo made the $60,000 investment. *See* Answer ¶¶ 10–11, 13–14; *see also* Goodhart Decl. Ex. B, at 1–2, ECF No. 18-2 (showing $60,000 in wire transfers from Asukwo to Investors Capital in December 2022). Second, the undisputed facts establish that Investors Capital breached the December 2022 investment agreement, as the defendants admitted that the company did not pay back the investment or the promised return as specified in the agreement. *See* Answer ¶ 23. Finally, the undisputed facts establish that Asukwo was damaged by the breach—he's out $75,000. *See* Pl.'s Facts ¶¶ 17, 24–25.

Asukwo, however, is not entitled to summary judgment on his claim that other investment agreements were breached. Asukwo says that he entered into a second investment agreement with Nantomah and his investment companies in July 2023 via the WhatsApp messenger application. *See* Pl.'s Facts ¶¶ 18–20, 26–27. He attached a copy of those messages to his affidavit. *See* Asukwo Aff. Ex. B, ECF No. 17-2. The messages appear to show that Asukwo wired Nantomah $10,000 in December 2022. *See id.* at 1–2. While that payment lines up with the first investment agreement, *see* Goodhart Decl. Ex. B, at 2, the messages do not discuss a second deal in July 2023, *see* Asukwo Aff. Ex. B, at 1–3. Asukwo did submit a receipt for a $10,000 wire transfer to Investors Capital LLC in July 2023. *See* Goodhart Decl. Ex. B, at 3. But the alleged second deal was between Asukwo and High Income Performance Partners, not Investors Capiral, and that receipt does not describe any specific terms of an alleged deal. The WhatsApp messages and the receipt therefore do not show mutual assent between the parties on a second investment agreement.

Similarly, Asukwo says that he and Nantomah entered into a third investment agreement in August 2023, again via WhatsApp. *See* Pl.'s Facts ¶¶ 21–23, 28–29. The message chain, however, simply shows a $3,000 wire transfer to High Income Performance Partners

6

on August 14. *See* Asukwo Aff. Ex. B, at 3. But the messages don't say what the money was for. Moreover, the alleged terms of that "agreement" as stated in the WhatsApp messages don't match up with terms asserted in Asukwo's proposed facts. *Compare* Asukwo Aff. Ex. B, at 3 (indicating that the "8 months were due on August 6, 2023") *with* Pl.'s Facts ¶¶ 21–23, 28 (asserting that the return on the third investment was due "within two months"—that is, "[b]y October 12, 2023"). Asukwo therefore hasn't shown a meeting of the minds regarding a third investment agreement.

Asukwo nevertheless argues that the defendants confirmed the existence of the second and third investment agreements in their answer and by not responding to his requests for admission. *See* Pl.'s Br. 7–10. However, in their answer, the defendants denied that there were any agreements aside from the December 2022 one. *See* Answer ¶¶ 11, 17, 20. Also, Asukwo sent his discovery requests to the defendants' lawyer. *See* Goodhart Decl. Ex. D, ECF No. 18-4; Goodhart Decl. Ex. E, ECF No. 18-5. But there's no evidence that counsel received them, and Auskwo's lawyers knew that by then counsel had withdrawn from representing the defendants in related cases. *See* Minute Order, *Ibe v. Nantomah*, No. 24-cv-388-SCD (E.D. Wis. Apr. 18, 2025), ECF No. 21 (defense counsel stating he was withdrawing "in all these cases"). It appears defense counsel simply forgot to formalize the withdrawal in this case.

Because the undisputed facts do not establish the existence of a second or a third investment agreement, Asukwo is not entitled to summary judgment on any claims against High Income Performance Partners.

## II. Asukwo Is Entitled to Partial Summary Judgment on His Civil Theft Claim

In Wisconsin, "[a]ny person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under s. . . . 943.20

7

. . . has a cause of action against the person who caused the damage or loss." Wis. Stat. § 895.446(1). "Section 943.20 defines five modes of committing theft." *State v. Lopez*, 2019 WI 101, ¶ 17, 936 N.W.2d 125, 129. Here, Asukwo asserts a claim of civil theft under the second mode: theft of money by one in possession. *See* Pl.'s Br. 8–11 (citing Wis. Stat. § 943.20(1)(b)).

To prevail on his civil theft claim, Asukwo must prove, by a preponderance of the credible evidence, four elements. *See* Wis. Stat. § 895.446(2); § 943.20(1)(b); Wis. JI—Criminal 1444. First, Asukwo must show that the defendants had possession or custody of his money by virtue of the defendants' office, business, or employment or as trustee or bailee. Second, Asukwo must show that the defendants intentionally used or retained possession of the money without Asukwo's consent and contrary to the defendants' authority. "The term 'intentionally' means that the defendant[s] must have had the mental purpose to use the money without [Asukwo's] consent and contrary to [their] authority." Wis. JI—Criminal 1444. Third, Asukwo must show that the defendants knew that the use or retention of the money was without Asukwo's consent and contrary to the defendants' authority. Fourth, and finally, Asukwo must show that the defendants intended to convert the money to their own use. "Knowledge and intent must be found, if found at all, from the defendant[s'] acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge and intent." *Id.*

"Under Wisconsin law, . . . civil theft require[s] the victim to have an ownership interest in the property . . . stolen." *Milwaukee Ctr. for Indep.*, 929 F.3d at 494 (citing § 895.446(1); § 943.20(1)(b); *H.A. Friend & Co. v. Pro. Stationery, Inc.*, 2006 WI App 141, ¶ 11, 720 N.W.2d 96, 100). "[T]he distinction between a debt and property is . . . critical in deciding whether" a defendant has committed civil theft. *Kentuckiana Healthcare, Inc. v. Fourth St. Sols.,*

8

*LLC*, 517 F.3d 446, 447 (7th Cir. 2008) (citations omitted). "If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property." *Id.* However, an agreement that entitles someone to specific funds—rather than a "generic right to payment"—can create an ownership interest. *See Milwaukee Ctr. for Indep.*, 929 F.3d at 494–95.

The undisputed facts show that Asukwo had an ownership interest in his investment funds. The investment agreement did not create a simple debtor-creditor relationship between Investors Capital LLC and Asukwo. Rather, the agreement established a partnership whereby Asukwo invested in the renovation of a specific property in exchange for a share of profits from the post-renovation sale of that property. The agreement describes Investors Capital as the "property manager" and Asukwo as the "investor" and indicates that the company "is willing to enter partnership" with qualified individuals. Asukwo Aff. Ex. A, at 1. Furthermore, Investors Capital and Asukwo "covenanted to work together to mutually benefit them," and the company agreed to "source, inspect, [and] acquire" an investment property "on behalf of the investor," acquire property "that befits the investment fund," and "commence partnership with the investor for the sum of $60,000.00 only for the fixing and flip of property located at 5722 S Martin Luther King Drive, Chicago IL 60637." *Id.* at 2. The signature lines of the agreement also list the parties as co-investors. *See id.* at 6–7. Given the plain terms of the investment agreement, Asukwo retained an ownership interest in his investment funds, and Investors Capital had custody of that money as a trustee.

The presence of a contract between Investors Capital LLC and Asukwo does not bar holding the defendants liable for civil theft. "The existence of a contract does not, in itself, bar claims for civil theft." *Senior Opportunity Fund Operations-I LLC v. Assisted Living by Hillcrest,*

9

*LLC*, No. 22-C-1008, 2023 WL 2837708, 2023 U.S. Dist. LEXIS 61449, at *11 (E.D. Wis. Apr. 7, 2023) (citing *H. A. Friend & Co.*, 2006 WI App 141, ¶ 17, 720 N.W.2d at 102). "Indeed, Wis. Stat. § 943.20(1)(b) is intended to specifically target those who 'are entrusted with the property of another and who retain or use that property in a way that does not comport with the owner's wishes.'" *Id.* (quoting *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 893 (W.D. Wis. 2006)). Thus, a cause of action for civil theft coexists with a breach of contract claim if the contract "*create[s] the state of things* which furnishes the occasion of [the theft]" but does not "create 'the underlying duty for [it].'" *Milwaukee Ctr. for Indep.*, 929 F.3d at 496 (quoting *Landwehr v. Citizens Tr. Co.*, 329 N.W.2d 411, 414 (Wis. 1983)).

Here, while Investors Capital LLC had custody of Asukwo's investment funds pursuant to the investment agreement, the company had an independent duty to refrain from retaining or using those funds without Asukwo's consent or authorization. *See Milwaukee Ctr. for Indep.*, 929 F.3d at 496–97 ("The duty to refrain from . . . stealing the BIRC Collections was entirely independent of the contract. It arose from the common law and Wisconsin statutes, not the contract between MCFI and MHC."). Asukwo consented to Investors Capital using his investment funds to renovate the Chicago property. *See* Asukwo Aff. Ex. A, at 2. However, he did not consent to the company retaining possession of his funds beyond the repayment deadline or to Nantomah using the funds for personal expenses and unrelated ventures. *See* Pl.'s Facts ¶¶ 15–17, 24–25, 45. The undisputed facts therefore show that the defendants retained possession of and used Asukwo's money without his consent and contrary to the defendants' authority. *Cf. Bich v. WW3 LLC*, No. 20-C-1016, 2022 WL 18025219, 2022 U.S. Dist. LEXIS 233542, at *32–34 (E.D. Wis. Dec. 30, 2022) (dismissing a civil theft claim because the plaintiffs voluntarily loaned their money to the defendants and

failed to allege that the defendants used that money for a purpose other than what they intended).

To prevail on his civil theft claim, Asukwo must also prove by a preponderance of the evidence that the defendants *knowingly* retained possession of or used the investment funds without Asukwo's consent, contrary to the defendants' authority, and with intent to convert those funds for their own use. *Tri-Tech Corp. of Am. v. Americomp Servs.*, 646 N.W.2d 822, 827–29 (Wis. 2002). "[T]he issue of intent is generally not readily susceptible of determination on summary judgment." *Id.* at 829 n.5. Some cases, however, contain "unrebutted evidence that the defendants acted with the requisite intent." *Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, 2019 U.S. Dist. LEXIS 35843, at *38 (E.D. Wis. Mar. 6, 2019) (citing *In re Kontrick*, 295 F.3d 724, 737 (7th Cir. 2002)). In fact, Wisconsin's theft statute "sets forth one acceptable method of proof: a defendant's refusal to pay a claim upon demand to one entitled to be paid out of trust funds is prima facie evidence of the defendant's intent to convert the trust funds to his own use." *Tri-Tech Corp.*, 646 N.W.2d at 829 (citing § 943.20(1)(b)).

Asukwo has presented prima facie evidence that the defendants in this case acted with specific criminal intent. Between August 2023 and the filing of the summary judgment motion in October 2025, Asukwo repeatedly contacted Nantomah via phone, email, and WhatsApp demanding payment. *See* Pl.'s Facts. ¶ 30. However, Nantomah simply made excuses and never paid back Asukwo's investment or the promised return. *Id.* ¶¶ 31–32. Nantomah instead used Asukwo's investment to fund his personal lifestyle and unrelated ventures. *See* Asukwo Aff. ¶ 25(b), ECF No. 17. Those uncontroverted facts are sufficient to establish the intent element of Wisconsin's criminal theft statute.

11

Because Asukwo has satisfied his burden on each element of section 943.20(1)(b), he is entitled to summary judgment against Nantomah and Investors Capital LLC on his civil theft claim under section 895.446.

### III. Asukwo Is Entitled to Partial Summary Judgment on His Deceptive Trade Practices Claim

Wisconsin's Deceptive Trade Practices Act "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 38, 677 N.W.2d 233, 244). To prevail on a claim under the Act, Asukwo must prove three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Id.* (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 749 N.W.2d 544, 553); *see also* Wis. Stat. § 100.18(1); Wis. JI—Civil 2418A.

The undisputed facts show that the defendants made a representation to the public with the intent to induce an obligation. Specifically, Nantomah actively promoted himself on social media as an experienced real estate investor and house flipper, claiming that he and his investment companies had an investment portfolio worth over $20 million. *See* Pl.'s Facts ¶¶ 7–9; *see also* Ex. F; Ex. G; Ex. H. Those posts encouraged others to "join now," "take action," and "co invest" with Nantomah and his companies. Nantomah made similar representations during several phone calls with Asukwo prior to the parties entering the first investment agreement. *See* Pl.'s Facts ¶¶ 10–15. "Deceptive sales promotions communicated via private phone calls are actionable under Wis. Stat. § 100.18." *Olajide v. Nantomah*, No. 24-CV-998, 2025 WL 3240897, 2025 U.S. Dist. LEXIS 228389, at *15 (E.D. Wis. Nov. 20, 2025)

12

(citing *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶¶ 25–27, 732 N.W.2d 792, 800).

The undisputed facts also show that several of Nantomah's public representations were untrue, deceptive, or misleading. Nantomah significantly inflated the value of his investment portfolio. While he claimed to have real estate holdings worth over $20 million, Nantomah testified in a similar lawsuit that, prior to 2023, his assets did not exceed $1 million. *See* Goodhart Decl. Ex. K, at 270:19–277:17, ECF No. 18-11; *see also* Pl.'s Facts ¶¶ 5–6.[3] Nantomah's statements about the value of his real estate portfolio were not simple exaggerations. *See Tietsworth*, 2004 WI 32, ¶ 41, 677 N.W.2d at 245 ("Puffery has been defined as the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." (citation and internal quotation marks omitted)). Rather, given their context, those statements appear designed to mislead potential investors into believing Nantomah was an experienced and highly successful real estate investor and house flipper who could make good on his lofty promises.

However, Asukwo has not demonstrated that Nantomah's other public representations were untrue, deceptive, or misleading. He insists that Nantomah falsely advertised that he or his companies owned or controlled the Chicago property listed in the investment agreement. As support, Asukwo cites public records and tax bills that he says "definitely prove" that the defendants never owned that property. Pl.'s Br. 12 (citing Goodhart Decl. Ex. J, ECF No. 18-10). The problem with Asukwo's argument is that the investment agreement doesn't say that the defendants owned or controlled the Chicago property. *See* Asukwo Aff. Ex. A, at 2

---

[3] Nantomah's deposition testimony is admissible here because the deposition satisfies Rule 56's affidavit requirements and has been made part of the record in this case. *See Gamble v. FCA US LLC*, 993 F.3d 534, 538–39 (7th Cir. 2021) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014)).

13

(indicating that Investors Capital LLC "shall commence partnership with the investor . . . only for the fixing and flip of property located at 5722 S Martin Luther King Drive, Chicago IL 60637"). At most, the agreement implies that the defendants *intended* to acquire an ownership interest in that property. *See* Pl.'s Br. 2 (Asukwo stating that Nantomah represented that Asukwo's investment "would fund the purchase and renovation of the [Chicago] property"). But the fact that they never did does not make their representation deceptive—perhaps they got outbid or the deal fell through.

That leaves the final element: whether Nantomah's statements materially induced a pecuniary loss to Asukwo. Wisconsin courts have endorsed "an expansive definition of pecuniary loss." *Tietsworth v. Harley-Davidson, Inc.*, 2003 WI App 75, ¶ 24, 661 N.W.2d 450, 455, *rev'd on other grounds*, 2004 WI 32, ¶¶ 38–45, 677 N.W.2d at 244–46; *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, ¶¶ 19–29, 859 N.W.2d 451, 458–60.

> In determining whether a plaintiff's loss was caused by the representation, the test is whether the plaintiff would have acted in its absence. Although the representation need not be the sole or only motivation for the plaintiff's decision to enter the contract, it must have been a material inducement. That is, the representation must have been a significant factor contributing to the plaintiff's decision.

Wis. JI—Civil 2418A (cleaned up and tailored to this case).

The undisputed facts show that Asukwo sustained a monetary loss as a result of Nantomah's misrepresentations about his investment portfolio. Asukwo asserts that he entered into the investment agreement with Investors Capital LLC in reliance on Nantomah's representations, including his social media posts about his success in real estate. *See* Pl.'s Facts ¶¶ 7–15. Those uncontested facts demonstrate that Nantomah's misrepresentations materially induced Asukwo to invest in the defendants' real estate ventures. And that action resulted in Asukwo's monetary loss.

14

Because Asukwo has satisfied his burden on each element of section 100.18, he is entitled to summary judgment against Nantomah and Investors Capital LLC on his deceptive trade practices claim.

## IV. Asukwo Is Entitled to Partial Summary Judgment on His State Unregistered Security Claim

"In Wisconsin, it is unlawful for a person to offer or sell a security unless it is a federally covered security, registered, or exempt from registration." *Toshner v. Goodman*, No. 18-cv-2005-bhl, 2024 WL 473616, 2024 U.S. Dist. LEXIS 21217, at *24 (E.D. Wis. Feb. 7, 2024) (citing Wis. Stat. § 551.301). "If the sale of a security violates Section 551.301, the purchaser may sue 'to recover the consideration paid for the security' after subtracting any income received and the legal rate of interest." *Id.* (quoting Wis. Stat. § 551.509(2)(a)). The purchaser can also recover costs and attorney fees. *See* § 551.509(2)(a).

The Wisconsin Uniform Securities Act "provides an extensive definition of 'security.'" *State v. Hudson*, 2013 WI App 120, ¶ 4, 839 N.W.2d 147, 151 (quoting Wis. JI—Criminal 2904, cmt. 1). Under the Act, an "investment contract" is a "security." Wis. Stat. § 551.102(28). More specifically, a "security" includes "[a]n investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor." Wis. Stat. § 551.102(28)(d)(1). The Act defines a "common enterprise" as "an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party." *Id.*

The investment opportunity Investors Capital LLC offered and sold to Asukwo qualifies as a security under Wisconsin law. According to the agreement, Investors Capital (through Nantomah) offered Asukwo an opportunity to contribute money to an investment fund involving flipping a specific real estate property for a profit, and the company promised

15

a high rate of return. *See* Asukwo Aff. Ex. A. Nantomah's promises induced Asukwo to invest $60,000, and his fortunes in that investment fund were tied to the efficacy of Nantomah's efforts in acquiring, renovating, and reselling the property. In other words, the agreement did not contemplate any effort by Asukwo beyond the initial transfer of funds. The investment offering therefore constitutes an investment in a common enterprise under Wisconsin securities law. *See, e.g.*, *State v. Johnson*, 2002 WI App 224, ¶¶ 10–19, 652 N.W.2d 642, 645–48 (finding that an investment offering qualified as a security under Wisconsin law where a defendant solicited loans for his business and promised a high rate of return).

The undisputed facts show that the investment opportunity Investors Capital LLC offered and sold to Asukwo was not registered under Wisconsin law, and there's no evidence to suggest that the agreement was a federally covered security or was exempt from registration. In their answer, the defendants admitted that Asukwo's investment pursuant to the terms of the investment agreement was "not registered with the SEC or any state regulatory agency." Answer ¶ 65; *see also* Pl.'s Facts ¶ 34 ("Plaintiff confirmed through investigation that no such registration exists."). Because the investment transaction was unregistered, to avoid liability under section 551.301, the defendants must prove that the transaction was exempt from registration. *See State v. Torgerson*, No. 2016AP411-CR, 2017 WL 3037549, 2017 Wisc. App. LEXIS 530, at *9–10 (Wis. Ct. App. July 18, 2017). The defendants have never claimed an exemption from registration. *See* Pl.'s Facts ¶¶ 35, 39. And the defendants have not responded to Asukwo's motion or proposed facts.

Because Asukwo has proven that Investors Capital LLC offered and sold him an unregistered security, and because there's no evidence the security was federally covered or exempt from registration, Asukwo is entitled to summary judgment against Investors Capital

16

on his unregistered security claim under the Wisconsin Uniform Securities Act. However, given that Nantomah was not party to that investment agreement, I will deny Asukwo's motion to the extent he seeks to hold Nantomah personally liable for the sale of an unregistered security under state law.

V. **Asukwo Is Entitled to Partial Summary Judgment on His State Securities Fraud Claim**

"Section 551.501 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security to 'make an untrue statement of a material fact,' or to omit a material fact that would have made a statement not misleading." *Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (quoting Wis. Stat. § 551.501(2)). If the sale of a security violates section 551.501(2), the seller is liable to the purchaser if "the purchaser did not know the untruth or omission and the seller cannot sustain the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission." Wis. Stat. § 551.509(2). The purchaser, however, does not need to prove that the seller intended to defraud. *See Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (citing *In re Butler*, No. 17-22141-svk, 2017 WL 5151678, 2017 Bankr. LEXIS 3835, at *19–20 (Bankr. E.D. Wis. Nov. 6, 2017)).

Asukwo is entitled to summary judgment against Investors Capital LLC on his state securities fraud claim. The undisputed facts show that, in connection with the offer and sale of the investment opportunity (i.e., a security under Wisconsin law), Investors Capital (through Nantomah) willfully made untrue statements about the value of its real estate portfolio. Those statements were material, as the value of the overall investment portfolio could be expected to influence a reasonable investor in deciding to invest, and Asukwo says it did. *See* Pl.'s Facts ¶¶ 7–15. Asukwo did not know that Nantomah had significantly inflated the value of his real estate holdings, and if he had, he would not have invested. *See* Asukwo

17

Aff. ¶¶ 6–8, 25, 45. Together, the information Asukwo learned from his own investigation (*see id.* ¶ 25) and Nantomah's sworn testimony about his wealth (*see* Ex. K, at 270:19–277:17) demonstrate that Investors Capital knew or should have known that Nantomah's statements about his real estate portfolio were untrue.

**VI. Asukwo Is Not Entitled to Summary Judgment on His Federal Unregistered Securities Claim**

Section 5 of the Securities Act of 1933 "provides that no securities may be sold in or by means of interstate commerce unless a registration statement is in effect or some exemption applies." *United States v. Spirk*, 503 F.3d 619, 620 (7th Cir. 2007) (citing 15 U.S.C. § 77e). An "investment contract" constitutes a "security" under the federal Securities Act. *See* 15 U.S.C. § 77b(a)(1). Federal law defines an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) (quoting *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 298–99 (1946)). However, the federal Securities Act deviates from the Wisconsin Uniform Securities Act in one key respect, at least as the federal Act has been interpreted by the Seventh Circuit. "This Circuit has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." *Id.* (citing *Hirk v. Agri-Rsch. Council, Inc.*, 561 F.2d 96 (7th Cir. 1977); *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972)); *cf. Johnson*, 2002 WI App 224, ¶ 17, 652 N.W.2d at 647 (explaining that "proof of horizontal commonality is not required in order to have the solicitation to loan money involve a security within the meaning of ch. 551").

Asukwo has failed to prove that the investment opportunity Investors Capital LLC offered to him constitutes a security under federal law. Although Asukwo vaguely asserts that

18

the defendants "engaged in multiple similar transactions," Pl.'s Facts ¶ 43, he does not provide any facts suggesting that the "similar" transactions would be pooled or that any other investors would share in the profits. Moreover, Asukwo identifies only one person who invested in the Chicago investment opportunity—himself. *See id.* ¶¶ 1–45; *see also* Asukwo Aff. Ex. A. Because Asukwo has failed to demonstrate that the investment agreement involved a common enterprise, he is not entitled to summary judgment on his unregistered securities claim under the Securities Act of 1933. *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 465 (7th Cir. 2014) (affirming summary judgment in favor of defendants because the plaintiffs failed to show that a purchase agreement involved a common enterprise); *Okeke v. Nantomah*, No. 25-cv-36-pp, 2025 WL 2494024, 2025 U.S. Dist. LEXIS 168717, *16–18 (E.D. Wis. Aug. 29, 2025) (denying default judgment on an unregistered securities claim under federal law because the complaint failed to allege that any other investors—beside the plaintiff—contributed funds or were entitled to receive profits).

## CONCLUSION

Asukwo lost over $60,000 investing in Nantomah's Ponzi scheme, and the undisputed facts in this action demonstrate that Nantomah and his investment company are on the hook for that money under several theories of liability. Accordingly, for all the foregoing reasons, the court **GRANTS in part** and **DENIES in part** the plaintiff's motion for summary judgment, ECF No. 14. Asukwo is entitled to summary judgment on his breach of contract claim against Investors Capital LLC, his civil theft claim against Investors Capital and Nantomah, his deceptive trade practices claim against Investors Capital and Nantomah, his state unregistered security claim against Investors Capital, and his state securities fraud claim against Investors Capital. However, Asukwo is not entitled to summary judgment on any of

19

his claims against High Income Performance Partners LLC, his breach of contract claim against Nantomah, his state unregistered security claim against Nantomah, his state securities fraud claim against Nantomah, or his federal unregistered securities claim against any defendant.

The plaintiff may file a motion seeking damages on or before February 20, 2026.

**SO ORDERED** this 9th day of January, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge